UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

PHOENIX IMPORTS, LTD.                          Case No.: _____
8775 Centre Park Drive PMB 261
Columbia, Maryland 21045

        **Plaintiff**

    **v.**

O'HANLON'S BREWING CO., LTD.
Great Barton Farm
Whimple, Devon EX5 2NY
England

        **Defendant**

## COMPLAINT

### Introduction

1.      Phoenix Imports Ltd. ("Phoenix") sues O'Hanlon's Brewing Co., Ltd. ("O'H") for

monies due Phoenix as a result of O'H's breach of a "License, Manufacturing and Distribution

Agreement" between them effective January 16, 2003 (the "Agreement")(Exhibit 1 hereto),

which Phoenix terminated by letter dated June 25, 2009 from Phoenix's undersigned counsel to

O'H, effective upon receipt by O'H (Exhibit 2 hereto).

### Jurisdiction and Venue

2.      Plaintiff Phoenix is a Maryland corporation.

3.      Defendant is incorporated in the United Kingdom.

4.      Jurisdiction is proper pursuant to 28 U.S.C. 1332, in that the parties are of diverse citizenship and the amount in controversy, excluding interest and costs, exceeds $75,000.

5.      Venue is proper pursuant to paragraph 14 of the Agreement, which provides that "all disputes concerning this Agreement or otherwise between the parties must be litigated solely in the Courts of Maryland, and the parties consent to the personal jurisdiction of those Courts over them," (Exhibit 1, paragraph 14), as well as 28 U.S.C. 1391.

### The Controversy

6.      Phoenix owns the beer and ale brands Thomas Hardy's and Royal Oak, among others ("the Brands"), including relating to trademarks, technical information, customer lists, yeast strains and recipes for each brew.  Phoenix has the power and authority to grant licenses to others to use the trademarks and other materials above.  (Agreement, page 1; page 3, paragraph 6; and page 5, paragraph 9)

7.      The Agreement had an initial term of five (5) years with automatic renewals so long as O'H was not in default, and with another condition relating to possible increases in compensation by O'H to Phoenix (Agreement, paragraph 1(B)).  That second condition is irrelevant as Phoenix never sought to increase its compensation and had no plans to do so.  As a result, the Agreement was a continuing one as long as O'H performed without default.

8.      O'H agreed to pay Phoenix a fee based on O'H's sales of the product in its territory, which consisted of the entire world, subject to an aggregate minimum amount per year. (Agreement, paragraph 2(A) and 5(A)).  This included, in part, selling at least 1,200 cases of the Brands per year to Phoenix itself, which had the exclusive right to distribute the Brands in the United States.  (Agreement, paragraphs 5(A) and 5(C))

9.    The Agreement permitted termination by Phoenix if O'H breached or defaulted in any one of several ways, including without limitation failing to sell to Phoenix a minimum number of cases per year and failing to make timely payment to Phoenix (Agreement, paragraphs 7 A(ii) and (vii)); or if O'H breached any provision of the Agreement and failed to cure after notice (Agreement, paragraph 7(B)).

10.    The Agreement required that following termination, O'H was required to provide a schedule of inventory, to return all of Phoenix's property and discontinue its use. (Agreement, paragraph 8). In March, 2009, O'H advised Phoenix it was unilaterally ceasing to brew a certain Hardy's Brand, in violation of the Agreement and the orders placed by Phoenix. In addition, O'H was then past due for fees due to Phoenix under the Agreement. It was afforded a right to cure.

11.    Phoenix inquired into O'H's intentions as well as the difficulties in reconciling O'H's sales summaries on which compensation was based. O'H was unresponsive, did not furnish the required products, and did not pay its growing indebtedness to Phoenix. As a result, Phoenix terminated the Agreement by letter dated June 25, 2009, as aforementioned (Exhibit 2).

12.    Phoenix's termination letter made demand for only (a) a preliminary projection of one year's lost fees owing to O'H's failure to pay license fees and (b) a projection of one year's lost profits suffered by Phoenix as a result of O'H's failure to furnish the products it was required to furnish Phoenix, thus resulting in Phoenix's inability to resell these products to its distribution chain.

13.    The one year projected total loss in Exhibit 2, was simply an effort to resolve the matter. And as such, the figure for fees paid in 2008, $10,911.77, was low for a damage calculation. The

six year average of fees paid by O'H is $22,626.84. Because the relationship was expected to continue for many years into the future, and it was required to be renewed by both parties absent default by O'H, it is reasonable to expect it would have continued to exist for at least another ten years, to 2019. As a result, the damage to Phoenix in projected lost fees is ten times the one year average of $22,628.84, or $226,268. And the damage to Phoenix in projected lost profits on resales it could not make owing to lack of a supplier is based on the one year projection in Exhibit 2 of $66,821. Ten years times that number $668,210. Thus, the total of both the ten year projected lost fees and ten year lost profit damage components is $894,498. Given the expected growth in demand, this likely understates these damages.

## COUNT 1
### BREACH OF CONTRACT

14.     Phoenix incorporates by reference the allegations of paragraphs 1-13 herein.

15.     O'H breached its Agreement with Phoenix by failing to pay fees in 2009 the amount to date of $999. The small number is attributable to the fact O'H immediately ceased brewing all the Brands near the beginning of the year.

16.     Had the Agreement continued as reasonably expected, at least to 2019, even without an increase in demand, the ten years of fees owed by O'H to Phoenix are $226,268, based on an average of fees paid over the six years of the Agreement, as aforesaid. Phoenix has been unable to replace O'H as its brewer for the Brands.

17.     Phoenix has been damaged in this Count in the amount of $227,267 ($226,268 plus $999) as a result of this breach of contract.

## COUNT II
## BREACH OF CONTRACT

18.    Phoenix incorporates by reference the allegations of paragraphs 1-13 herein.

19.    O'H breached its Agreement with Phoenix by failing to supply the required amount of product. Phoenix's projected lost profits caused by that breach for one year are $66,821, as aforesaid.

20.    Had the agreement continued as reasonably expected at least to 2019, even without an increase in demand, the ten years of lost profits to Phoenix caused by O'H's breach are therefore $668,210. Phoenix has been unable to replace O'H as its brewer for the Brands.

21.    Phoenix has been damaged in this Count in the amount of $668,210.

## COUNT III
## BREACH OF CONTRACT

22.    Phoenix incorporates by reference the allegations of paragraphs 1-13 herein.

23.    O'H has failed to return Phoenix's property, though required to do so by Agreement, paragraph 8. This property is described in this Complaint, paragraph 6.

24.    Phoenix has suffered irreparable damage to its business and goodwill as a result of this breach by O'H. It cannot be compensated for this in money alone.

25.    The Court should order O'H to fulfill its obligations under Agreement, paragraph 8.

## COUNT IV
## ACCOUNTING

26.    Phoenix incorporates by reference the allegations of paragraphs 1-13 and 23-24 herein.

27.    O'H has breached the Agreement, paragraph 8, by failing to account for its inventory of

the Brands it brewed for Phoenix, and by failing to account for its worldwide sales of the Brands.

28.    The Court should require an accounting by O'H of this information.

## PRAYER

WHEREFORE, Phoenix prays that the Court award it damages of $894,498 for O'H's

breaches of contract in Counts I and II, order the relief prayed in Count III, and order an

accounting as prayed in Count IV, together with costs of suit and Phoenix's attorneys' fees,

which fees are provided for expressly in the Agreement, paragraph 14(C), and the Court should

order such other relief as may be appropriate.

Dated September 23, 2009

_____
Allan P. Hillman
U.S.D.C. (MD) #00119
Kern & Hillman, LLC
2911 Dixwell Avenue, Suite 203
Hamden, CT 06518
Telephone:  (203) 782-9076
Facsimile:  (203) 782-9081
allan@franchiselawsource.com

Attorney for Plaintiff
Admitted in Maryland